**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANNETTA HAMPTON NICHOLAS, <br><br> Plaintiff, <br><br> vs. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, UNITED WHOLESALE MORTGAGE, LLC; <br><br> Defendants. | Case No.: 1:26-cv-01695 <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Annetta Hampton Nicholas ("Plaintiff"), by and through the undersigned counsel, brings this action on an individual basis, against Experian Information Solutions, Inc. ("Experian"); Trans Union LLC ("Trans Union") (collectively, the "Credit Bureau Defendants"); and United Wholesale Mortgage, LLC ("UWM"); (all defendants collectively, "Defendants"), and states as follows:

**INTRODUCTION**

1.    The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2.    However, unfortunately this information has also become readily available for, and

1

subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Credit Bureau Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3.    The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.    These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5.    Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.    One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7.    The preservation of one's good name and reputation is also at the heart of the

FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)] (emphasis added).

8.     The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

9.     In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

10.     The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

3

11.     Plaintiff's claims arise out of the Credit Bureau Defendants' blatantly inaccurate and materially misleading credit reporting, wherein the Credit Bureau Defendants furnished and disseminated information to third parties indicating that Plaintiff's United Wholesale Mortgage mortgage account was "30-59 days past due," with a reported date of first delinquency of August 31, 2025, despite Plaintiff's timely compliance with the operative payment obligations established under the approved Freddie Mac Flex Modification Trial Period Plan.

12.     Accordingly, Plaintiff brings claims against the Credit Bureau Defendants for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

13.     Plaintiff also brings a claim against Defendant UWM for failing to fully and properly reinvestigate Plaintiff's disputes and review all relevant information provided by Plaintiff and the Credit Bureau Defendants, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

14.     As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

## PARTIES

15.     Annetta Hampton Nicholas ("Plaintiff") is a natural person residing in Washington, District of Columbia, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16.     Defendant Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") is a consumer reporting agency that maintains its principal place of business at 475

Anton Boulevard, Costa Mesa, California 92626.

17. Defendant Trans Union LLC ("Defendant Trans Union" or "Trans Union") is a consumer reporting agency that maintains its principal place of business at 555 West Adams Street, Chicago, Illinois 60661.

18. Defendant United Wholesale Mortgage, LLC ("Defendant UWM" or "UWM") is a mortgage loan servicer with its headquarters located at 585 South Boulevard East, Pontiac, Michigan 48341.

19. UWM is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

20. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p .

21. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District, including the dissemination of inaccurate consumer report information concerning Plaintiff, Plaintiff's receipt and review of the inaccurate reporting, Plaintiff's disputes regarding the same, and the resulting harm suffered by Plaintiff within this District.

## FACTS

### Plaintiff and Her Co-Borrower Apply for and Are Approved for a Freddie Mac Flex Modification of Their UWM Mortgage

22. Plaintiff and her daughter, Lola Brigitte Watson ("Ms. Watson"), are co-borrowers on a residential mortgage loan serviced by Defendant United Wholesale Mortgage, account number ending in 0266 (the "UWM Mortgage"), which was opened on or about December 7, 2022.

23. In or about mid-2025, Plaintiff and Ms. Watson experienced a loss of rental income that they had previously relied upon to make the regular monthly payments associated with the

UWM Mortgage.

24. As a result of that loss of income, Plaintiff and Ms. Watson applied to Defendant United Wholesale Mortgage for mortgage assistance and loss mitigation relief in connection with the UWM Mortgage.

25. On or about July 31, 2025, Defendant United Wholesale Mortgage sent Plaintiff and Ms. Watson a letter notifying them that they had been approved for a loan modification under the Freddie Mac Flex Modification program, including a Trial Period Plan (the "Trial Period Plan").

26. Enclosed with the approval letter was a separate correspondence setting forth the terms and conditions of the Trial Period Plan, including the schedule and amount of the three required trial monthly payments.

27. To accept the offer, Plaintiff and Ms. Watson were required to do one of the following on or before August 21, 2025: (a) contact Defendant United Wholesale Mortgage by telephone or in writing to confirm their acceptance of the Trial Period Plan, or (b) accept the offer by remitting their first required trial monthly payment in the amount of $5,340.11.

28. On or about August 13, 2025, Ms. Watson contacted Defendant United Wholesale Mortgage by telephone and informed UWM's representative that she and Plaintiff intended to accept the Trial Period Plan offer.

29. During that call, UWM's representative confirmed that Plaintiff's August 2025 mortgage payment obligation would consist of the reduced Trial Period Plan payment of $5,340.11, rather than the ordinary monthly mortgage payment of $5,583.03, and further confirmed that such payment would constitute the first of the three required trial monthly payments under the Trial Period Plan.

30. Consistent with those instructions, the written terms of the Trial Period Plan required Plaintiff and Ms. Watson to make three trial monthly payments in the amount of $5,340.11, each due on or before the first day of the month for September, October, and November 2025, specifically September 1, 2025, October 1, 2025, and November 1, 2025.

31. Defendant United Wholesale Mortgage's written Trial Period Plan expressly stated that Plaintiff and Ms. Watson would be making the reduced trial period payments instead of their normal monthly mortgage payments during the duration of the Trial Period Plan.

32. Prior to entering the Trial Period Plan, Plaintiff had consistently made regular monthly payments on the UWM Mortgage.

33. On or about August 28, 2025, Plaintiff remitted a payment to Defendant United Wholesale Mortgage in the amount of $5,340.11, thereby satisfying the first Trial Period Plan payment due on or before September 1, 2025.

34. Plaintiff paid more than the scheduled Trial Period Plan payment amount in September 2025, specifically remitting $5,825.95 to Defendant United Wholesale Mortgage, because she had received a credit report alert concerning negative information appearing on the UWM Mortgage account and wanted to avoid any suggestion of further delinquency.

35. On or about October 29, 2025, Plaintiff remitted an additional payment to Defendant United Wholesale Mortgage in the amount of $4,854.27 in connection with the final Trial Period Plan payment due on or before November 1, 2025.

36. Plaintiff's September 18, 2025 payment of $5,825.95 and October 29, 2025 payment of $4,854.27 totaled $10,680.22, which equals two Trial Period Plan payments of $5,340.11.

37. Thus, Plaintiff and Ms. Watson paid the full amount required for the second and

7

third Trial Period Plan payments, totaling $10,680.22, prior to the November 1, 2025 deadline.

38.    On or about November 3, 2025, following Plaintiff's and Ms. Watson's successful completion of the Trial Period Plan, Defendant United Wholesale Mortgage sent Plaintiff and Ms. Watson a Loan Modification Agreement for execution.

39.    The November 3, 2025, cover letter expressly advised Plaintiff and Ms. Watson that they had been approved for a Loan Modification and that the enclosed Loan Modification Agreement reflected the proposed terms of their modified mortgage.

40.    Under the modification terms provided by Defendant United Wholesale Mortgage, the modified mortgage loan carried an effective date of November 1, 2025, a new monthly payment obligation of $5,340.11 inclusive of escrow, and a first modified payment due date of December 1, 2025.

41.    The modified loan terms further reflected that Defendant United Wholesale Mortgage deferred a portion of the unpaid principal balance, identified in the Loan Modification Agreement as a deferred principal balance in the amount of $31,046.07.

**Defendants Report that Plaintiff is Delinquent on Her UWM Mortgage Despite Her Timely Performance Under the Trial Period Plan**

42.    In or around September 2025, while Plaintiff and Ms. Watson were actively performing under the Trial Period Plan, Plaintiff learned that negative and inaccurate information was being furnished and reported concerning the UWM Mortgage account.

43.    Plaintiff was confused and distressed by the negative reporting because she had accepted Defendant United Wholesale Mortgage's Trial Period Plan and had timely remitted the first required trial payment in the amount of $5,340.11 on or about August 28, 2025, prior to the September 1, 2025, deadline.

44.    Despite learning of the inaccurate reporting, Plaintiff continued remitting payments

8

to Defendant United Wholesale Mortgage in an effort to remain compliant with the Trial Period Plan, avoid any further inaccurate negative reporting, and protect her creditworthiness and financial standing.

45.    Between September 2025 and November 2025, Plaintiff and Ms. Watson contacted Defendant United Wholesale Mortgage and the consumer reporting agencies in an effort to dispute and resolve the inaccurate reporting concerning the UWM Mortgage account.

46.    Plaintiff and Ms. Watson attempted to explain that they were not delinquent under the Trial Period Plan because Defendant United Wholesale Mortgage had expressly approved them to make reduced trial payments in lieu of their ordinary monthly mortgage payments during the Trial Period Plan period.

47.    In or around January 2026, Plaintiff obtained copies of her consumer reports from Defendants Experian and Trans Union, as well as non-party Equifax, and upon review discovered that the inaccurate delinquency reporting concerning the UWM Mortgage account still had not been corrected.

48.    Specifically, the Credit Bureau Defendants are reporting the following information:

(a)    Account Name: United Wholesale Mortgage
Account Number: XXXXXXXXX10266
Account Type: Mortgage
Date Opened: 12/07/2022
Current Balance Reported: $759,495
Pay Status: Account 30 Days Past Due Date

49.    The continued reporting was particularly confusing and distressing to Plaintiff because she had continued making payments to Defendant United Wholesale Mortgage, had satisfied the required Trial Period Plan payment obligations, and had repeatedly communicated with UWM and the consumer reporting agencies in an effort to correct the inaccurate information.

50.    The reported delinquency was inaccurate because Plaintiff timely remitted the first

required Trial Period Plan payment prior to the September 1, 2025 due date in accordance with the payment obligations approved and communicated by Defendant United Wholesale Mortgage.

51.    Upon information and belief, Defendant United Wholesale Mortgage furnished information to non-party Equifax and Defendants Experian, and Trans Union indicating that Plaintiff was 30 or 30-59 days delinquent on the UWM Mortgage account for September 2025, despite Plaintiff's timely remittance of the first required Trial Period Plan payment prior to the September 1, 2025 deadline and despite the operative payment obligations having been modified under the approved Trial Period Plan.

52.    Upon information and belief, Defendant United Wholesale Mortgage furnished information to the Credit Bureau Defendants indicating that Plaintiff was 30 days late in relation to the September 2025 payment obligation on the UWM Mortgage account.

53.    Plaintiff reasonably understood the adverse reporting to mean that Defendants were treating her as delinquent for making the very reduced payment that Defendant United Wholesale Mortgage had expressly approved and instructed her to make under the Trial Period Plan.

**Plaintiff's Dispute to Defendants Regarding the Inaccurate Credit Reporting**

54.    On or about February 5, 2026, extremely shocked, surprised, and embarrassed by Defendants' inaccurate reporting, Plaintiff disputed the inaccurate 30-day late and/or 30-59 days past due delinquency reporting associated with the UWM Mortgage account with Defendant United Wholesale Mortgage and each of the Credit Bureau Defendants.

55.    On or about February 5, 2026, extremely shocked, surprised, and embarrassed by Defendants' inaccurate reporting, Plaintiff disputed the inaccurate 30-day late and/or 30-59 days past due delinquency reporting associated with the UWM Mortgage account with Defendant United Wholesale Mortgage and each of the Credit Bureau Defendants.

10

56.     Plaintiff requested that Equifax, Experian, and Trans Union reinvestigate the disputed information, correct the reporting, and for each to send her a corrected copy of her credit report.

57.     While Plaintiff did not receive a direct written response from non-party Equifax, Plaintiff subsequently obtained an updated Equifax consumer report and discovered that Equifax had corrected the disputed UWM Mortgage reporting by changing the account status from "30-59 Days Past Due" to "Pays As Agreed" and removing the previously reported Date of First Delinquency of August 31, 2025.

**Defendant Experian's Unreasonable Dispute Reinvestigation**

58.     Upon information and belief, Defendant Experian transmitted an Automated Credit Dispute Verification ("ACDV") to Defendant United Wholesale Mortgage pursuant to Plaintiff's February 2026 dispute submitted to Experian.

59.     On or about April 3, 2026, Plaintiff received the dispute results issued by Defendant Experian in response to Plaintiff's February 2026 dispute.

60.     Defendant Experian's dispute results identified the disputed creditor/vendor as "UNITED WHSLE MORT," identified the UWM Mortgage account at issue, and stated that the disputed item had been updated.

61.     However, Defendant Experian did not delete the disputed UWM Mortgage reporting, remove the account from Plaintiff's potentially negative items, or correct the inaccurate delinquency reporting associated with the account.

62.     In or around April 2026, Plaintiff accessed Defendant Experian's dispute results and updated consumer reporting concerning the UWM Mortgage account.

63.     Defendant Experian's updated reporting identified the UWM Mortgage account

and indicated that the account had been updated as a result of Experian's processing of Plaintiff's dispute in or around March 2026.

64. However, Defendant Experian failed to correct or delete the inaccurate delinquency-related reporting associated with the UWM Mortgage account, including the disputed late-payment reporting for September 2025.

65. Upon information and belief, Defendant Experian failed to adequately review and consider all relevant information and documentation provided by Plaintiff in support of Plaintiff's dispute concerning the UWM Mortgage account.

66. Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's February 2026 dispute concerning the inaccurate delinquency reporting associated with the UWM Mortgage account.

67. Thereafter, Defendant Experian failed to correct or delete the inaccurate 30-day late notation appearing in Plaintiff's consumer file concerning the UWM Mortgage account.

68. Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's February 2026 dispute, or any meaningful reinvestigation whatsoever, to determine whether the disputed delinquency-related information concerning the UWM Mortgage account was inaccurate and to record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Trans Union's Unreasonable Dispute Reinvestigation**

69. Upon information and belief, Defendant Trans Union transmitted an Automated Credit Dispute Verification ("ACDV") to Defendant United Wholesale Mortgage pursuant to Plaintiff's February 2026 dispute submitted to Trans Union.

70. Upon information and belief, Defendant Trans Union received Plaintiff's February

2026, dispute.

71.     Upon information and belief, Defendant Trans Union received Plaintiff's February 2026 dispute concerning the inaccurate delinquency reporting associated with the UWM Mortgage account.

72.     Upon information and belief, Defendant Trans Union failed to adequately review and consider all relevant information and documentation provided by Plaintiff in support of Plaintiff's dispute concerning the UWM Mortgage account.

73.     Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's February 2026 dispute concerning the inaccurate delinquency reporting associated with the UWM Mortgage account.

74.     Thereafter, Defendant Trans Union failed to correct or delete the inaccurate 30-day late notation appearing in Plaintiff's consumer file concerning the UWM Mortgage account.

75.     Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's February 2026 dispute, or any meaningful reinvestigation whatsoever, to determine whether the disputed delinquency-related information concerning the UWM Mortgage account was inaccurate and to record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

### Defendants' Method for Considering Consumer Credit Report Disputes

76.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

77.     The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to

respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

78.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

79.     It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

80.     Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

81.     Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

82.     The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

83.     These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

84.     Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

85.     The data furnishers, like Defendant UWM, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. §

14

1681s-2(b).

86.    Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Defendant UWM's Unreasonable Dispute Reinvestigation**

87.    Upon information and belief, in or about February 2026, Defendant United Wholesale Mortgage received Defendant Experian's ACDV concerning Plaintiff's dispute and failed to conduct a reasonable investigation with respect to the delinquency-related information disputed by Plaintiff.

88.    Upon information and belief, Defendant United Wholesale Mortgage failed to review and consider all relevant information provided by Defendant Experian concerning Plaintiff's dispute tendered in or about February 2026.

89.    Upon information and belief, in or about February 2026, Defendant United Wholesale Mortgage verified the disputed delinquency-related information concerning the UWM Mortgage account as accurate to Defendant Experian.

90.    Upon information and belief, in or about February 2026, Defendant United Wholesale Mortgage received Defendant Trans Union's ACDV concerning Plaintiff's dispute and failed to conduct a reasonable investigation with respect to the delinquency-related information disputed by Plaintiff.

91.    Upon information and belief, Defendant United Wholesale Mortgage failed to review and consider all relevant information provided by Defendant Trans Union concerning Plaintiff's dispute tendered in or about February 2026.

92. Upon information and belief, in or about February 2026, Defendant United Wholesale Mortgage verified the disputed delinquency-related information concerning the UWM Mortgage account as accurate to Defendant Trans Union.

93. Defendant United Wholesale Mortgage violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed delinquency-related information concerning the UWM Mortgage account, failing to review and consider all relevant information available to it, and failing to modify, delete, or permanently block information that was inaccurate, incomplete, materially misleading, and/or unverifiable.

94. Plaintiff reasonably believes that Defendant United Wholesale Mortgage continued furnishing information to the national consumer reporting agencies inaccurately and misleadingly suggesting that Plaintiff was 30 days delinquent on a mortgage payment obligation allegedly owed for September 2025, despite Plaintiff's compliance with the operative payment obligations established under the approved Trial Period Plan.

95. Plaintiff reasonably believes that Defendants continued to publish and disseminate consumer report information inaccurately indicating that Plaintiff was 30 days delinquent on a payment obligation allegedly owed to Defendant United Wholesale Mortgage for September 2025.

96. As a result of the inaccurate 30-day late notation, and despite Plaintiff's timely performance under Defendant United Wholesale Mortgage's Trial Period Plan, Defendants substantially impaired Plaintiff's ability to obtain credit on fair and favorable terms and made it practically difficult for Plaintiff to confidently pursue additional credit opportunities.

97. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

16

98.     At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

99.     As a standard practice, do not conduct independent investigations in response to consumer disputes.  Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice.  *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

100.    Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs.  Accordingly, Defendants' FCRA violations are willful.

101.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

102.    Plaintiff is retired and heavily relies upon accurate consumer reporting to preserve access to credit and financing when needed, including for medical, household, and other essential living expenses.

103.    On or about May 2, 2026, Plaintiff applied for a credit card with Capital One, but Capital One denied Plaintiff's application. The adverse action notice identified Defendants

17

Experian and Trans Union, and non-parties Equifax and LexisNexis as sources of consumer report information used in connection with the credit decision. Although Capital One identified insufficient income as the stated reason for denial, Defendants' inaccurate reporting nevertheless damaged Plaintiff's credit profile and contributed to Plaintiff's reasonable belief that additional credit applications would likely be denied or approved only on materially less favorable terms.

104.    Furthermore, upon information and belief, Plaintiff suffered additional credit-related harm beyond formal lending denials, including diminished access to ordinary consumer and retail credit opportunities, reduced purchasing flexibility, and impairment in Plaintiff's ability to obtain store-based financing and revolving consumer credit on fair and favorable terms given her true creditworthiness.

105.    Plaintiff required financing to address extensive dental work and related medical needs, but because of the inaccurate negative reporting and Plaintiff's resulting fear of additional denials or materially unfavorable credit terms, Plaintiff was forced to postpone such treatment and financing efforts.

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(Against Defendants Experian, and Trans Union)**

106.    Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

107.    Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning Plaintiff.

108.    Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover

under 15 U.S.C. § 1681o.

109.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Against Defendants Experian, and Trans Union)

110.    Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

111.    Defendants violated 15 U.S.C. § 1681i by failing to conduct reasonable reinvestigation(s) of Plaintiff's dispute(s) after Plaintiff notified them that, contrary to what was reported in Plaintiff's file, she was not deceased, and by failing to maintain reasonable procedures to investigate Plaintiff's dispute(s).

112.    Defendants' conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

113.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
### 15 U.S.C. § 1681s-2(b)
### Failure to Conduct an Investigation and Correct the Reporting
### (Against Defendant UWM)

114.    Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

115.    Defendant UWM furnished the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union.

116.    Defendant UWM violated 15 U.S.C. § 1681s-2(b) by failing to investigate

Plaintiff's dispute, or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union.

117.    As a result of Defendant UWM's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

118.    Defendant UWM's conduct, action, and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant UWM was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

119.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant UWM in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs, and awarding Plaintiff such other and further relief as the Court may deem appropriate and proper.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 18th day of May 2026,

*/s/ Daniel Cohen*
Daniel Cohen, D.C. Bar # NY0610
CONSUMER ATTORNEYS, PLLC
68-29 Main Street
Flushing NY 11367
T: (718) 770-7901
F: (718) 715-1750
E: dcohen@consumerattorneys.com

Meir Rubinov, NY Bar # 6077887
*Pro Hac Vice Forthcoming*
CONSUMER ATTORNEYS
68-29 Main Street
Flushing NY 11367
T: 718-640-8123
F: (718) 247-8020
E: mrubinov@consumerattorneys.com

*Attorneys for Plaintiff,*
*Annetta Hampton Nicholas*

21